United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 24, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-10195

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ERIC RICHARD WISE

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:

Defendant-appellant Eric Richard Wise appeals his judgment of conviction and sentence, arguing that the district court erred by refusing to group his counts of conviction pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 (2002) [hereinafter U.S.S.G.]. For the following reasons, we AFFIRM the judgment of conviction and sentence as imposed by the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 2002, defendant-appellant Eric Richard Wise ("Wise"), a thirty-seven-year-old man living in Cedar Rapids,

-1-

Iowa, began communicating over the Internet with Jane Doe ("Doe"), a thirteen-year-old female living in Lubbock, Texas. Wise communicated with Doe in chat rooms and through instant messaging, and eventually he also communicated with Doe by e-mail and telephone. Based on their conversations, Wise knew that Doe was not interested in forming a relationship with a man of his age,[1] so he initially represented to Doe that he was sixteen years old. In subsequent communications, he gradually raised his age to thirty-one.

During these conversations, Wise and Doe often talked about sex. Wise encouraged Doe to "be nastier," to say "dirtier" things, and to "be kinky with [him]" and expressed his approval when she complied with his requests. Wise encouraged Doe to elaborate on the sex acts they might perform on each other.

On December 27, 2002, in response to Wise's request, Doe e-mailed Wise a digital photograph that depicted her nude from the waist up and exposed her breasts. That same day, Wise responded by e-mailing Doe a nude photograph of himself. The next day, he sent her an e-mail, commenting on her picture: "Youre so beautiful [Doe]. I keep looking at your pic . . . wow, what a perfect chest. Yum . . . when can I see the rest? hehe Love u sooooooo much. Ya know we are engaged, since I asked u to marry

_____

[1] In one of their chat room conversations, Doe complained to Wise that she was upset that another man who was thirty-three years old had shown interest in her.

-2-

me and u said yes. :) Your Fiancee, E."[2]  On December 30, 2002, again in response to Wise's prompting, Doe photographed herself in a sexually explicit pose, exhibiting her genitals and pubic area.  This photograph is referenced in count one of the second superseding indictment as an image bearing a creation/modification date of December 30, 2002, at 7:38 p.m.

On January 1, 2003, Wise e-mailed Doe a color photograph of six rings.  In this e-mail, Wise stated: "Which of these 6 u like?  Im thinking even though I want to get one thats a promise ring, maybe we should get one that has colored stones, so ya rents don't get suspicious."[3]

On January 2, 2003, Wise and Doe exchanged several photographs.  Doe photographed herself nude in five different poses, two of which displayed her genitals and pubic area.  After each photograph was taken, she downloaded it on to her computer and e-mailed it to Wise.  Wise e-mailed Doe a full-length nude photograph of himself in which he displayed his erect penis.  He also e-mailed a photograph of himself sitting on a couch holding a cat.  The two photographs showing Doe's genitals and pubic area are referenced in counts two and three of the second superseding indictment and bear a creation/modification date of January 2,

---

[2]  1 R. at 180 (quoted exactly as written by Wise, but omitting the victim's name).

[3]  Id. at 181 (quoted exactly as written by Wise, with "rents" referring to parents).

2003, at 11:50 a.m. and 12:28 p.m., respectively.

On January 11, 2003, again in response to Wise's request, Doe photographed herself in two sexually explicit poses, exposing her genitals and pubic area. These two photographs are referenced in counts four and five of the second superseding indictment and bear a creation/modification date of January 11, 2003, at 10:14 p.m. and 10:21 p.m., respectively.[4] Wise stored the photographs referenced in counts one through five of the second superseding indictment on compact discs at his Iowa residence.

Shortly after Doe sent the last of the photographs, Wise made arrangements to travel to Lubbock to meet Doe. Wise reserved a motel room in Lubbock for the nights of January 17-19, 2003, rented a car, and drove from Cedar Rapids to Lubbock. On January 16, 2003, Wise e-mailed Doe informing her that he was on his way to meet her. Wise traveled to Lubbock for the purpose of engaging in sexual acts with Doe, and this conduct is referenced in count fifteen of the second superseding indictment. His enticement of Doe, which occurred from their initial Internet communications through January 17, 2003, is referenced in count

---

[4] As part of his factual resume, Wise admitted that: Doe would not have produced any of the sexually explicit images that she took of herself, nor would she have sent them by way of the Internet from Lubbock, Texas, to Cedar Rapids, Iowa, but for the request of Wise for such images to be produced and sent to him. Id. at 182.

-4-

fourteen of the second superseding indictment.

Upon arriving in Lubbock on January 17, 2003, Wise met Doe and drove her to a location in southwest Lubbock. While in the vehicle, Wise fondled Doe's genitals and digitally penetrated her genital opening. On January 18, 2003, Wise met Doe at a Wal-Mart and drove her to his motel room where he took non-sexual photographs of himself with Doe. Wise then returned Doe to the Wal-Mart where he had picked her up.

On January 19, 2003, Wise picked up Doe and drove her to his motel. Wise set up his eight-millimeter camcorder on a tripod next to the bed, with the intent of recording his sexual encounter with Doe. They engaged in various sexual acts, including oral-genital and vaginal intercourse, and Wise recorded these acts. Wise engaged in this same sexually explicit conduct and recorded the encounter on January 20, 2003.[5] That same day, Wise returned to Cedar Rapids from Lubbock, transporting the videotapes. The videotapes from the two sexual encounters are referenced in counts six and seven of the second superseding indictment.[6]

---

[5] Wise did not use any force or threats of force against Doe during these sexual encounters. He also did not attempt to conceal the fact from Doe that he intended to record and did in fact record the encounters.

[6] The videotapes, along with the compact discs containing the sexually explicit photographs of Doe, were found in Wise's residence in Cedar Rapids when a search warrant was executed there in August of 2003 by Kenosha, Wisconsin police on unrelated child enticement charges.

Wise was charged by a second superseding indictment with fifteen counts of various sexual exploitation offenses.[7] On October 21, 2004, Wise pleaded guilty to nine of the fifteen counts.[8] Specifically, Wise pleaded guilty to: seven counts of production of child pornography (collectively, the "production counts" or "production of child pornography counts"), in violation of 18 U.S.C. § 2251(a); one count of enticement of a child ("enticement count"), in violation of 18 U.S.C. § 2422(b); and one count of travel with intent to engage in a sexual act with a juvenile ("travel count"), in violation of 18 U.S.C. § 2423(b). As part of Wise's plea agreement, the government agreed to dismiss the remaining six counts at sentencing.

In the Presentence Report ("PSR"), the probation officer divided the nine counts into seven groups using the grouping rules in U.S.S.G. § 3D1.2.[9] The probation officer separately

_____

[7] Wise originally was charged by a seven-count indictment dated November 6, 2003. On December 10, 2003, a fifteen-count superseding indictment was filed. The second (and final) superseding indictment was filed on August 18, 2004.

[8] In his plea agreement, Wise reserved the right to appeal an incorrect application of the Sentencing Guidelines.

[9] Section 3D1.2 in relevant part provides:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

     (a)   When counts involve the same victim and the same act or transaction.

grouped production counts two and three and production counts four and five after concluding that these production counts "occurred on the same occasion."  The groups were as follows:

Group One:     Count 1 (December 30, 2002 photograph of Doe, exposing her genitals and pubic area);
Group Two:     Counts 2 and 3 (January 2, 2003 photographs of Doe, exposing her genitals and pubic area);
Group Three:   Counts 4 and 5 (January 11, 2003 photographs of Doe, exposing her genitals and pubic area);
Group Four:    Count 6 (January 19, 2003 videotape depicting Doe engaging in sexually explicit conduct);
Group Five:    Count 7 (January 20, 2003 videotape depicting Doe engaging in sexually explicit conduct);
Group Six:     Count 14 (enticement of a juvenile); and
Group Seven:   Count 15 (travel with intent to engage in sexual acts with a juvenile).

Using the procedures in U.S.S.G. § 3D1.1,[10] the probation officer

---

(b)   When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

[10]   Section 3D1.1 in relevant part provides:

(a)   When a defendant has been convicted of more than one count, the court shall:

(1)   Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

(2)   Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

(3)   Determine the combined offense level applicable to all Groups taken together by

determined the offense level applicable to each group.  In

calculating the combined offense level for Wise's offenses

pursuant to U.S.S.G. § 3D1.4,[11] the probation officer assigned

each group as a unit, for a total of seven units.  Based on these

units, the probation officer recommended a five-level increase to

Wise's offense level.  After subtracting three levels for Wise's

acceptance of responsibility, the probation officer recommended a

sentencing range of 135 to 168 months.  The government filed a

statement adopting the PSR.

Prior to sentencing, Wise filed written objections to the

PSR, arguing, inter alia, that the probation officer should group

all nine of his counts.  According to Wise, "all nine counts to

_____

applying the rules specified in § 3D1.4.

[11]  Section 3D1.4 in relevant part provides:

The combined offense level is determined by taking the
offense level applicable to the Group with the highest
offense level and increasing that offense level by the
amount indicated in the following table:

| Number of Units | Increase in Offense Level |
|---|---|
| 1 | none |
| 1 1/2 | add 1 level |
| 2 | add 2 levels |
| 2 1/2 - 3 | add 3 levels |
| 3 1/2 - 5 | add 4 levels |
| More than 5 | add 5 levels. |

In determining the number of Units for purposes of this
section:

(a)  Count as one Unit the Group with the highest
     offense level.  Count one additional Unit for each
     Group that is equally serious or from 1 to 4 levels
     less serious.

which [he] pleaded guilty involve substantially the same harm because they involve the same victim . . . and consist of two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." In an addendum to the PSR, the probation officer maintained that he had applied the correct grouping analysis and that his analysis was supported by examples in the commentary to U.S.S.G. § 3D1.2. He acknowledged that "[c]ase law is limited in this area" and provided an alternative sentence of 120 months "should the Court decide an improper grouping analysis occurred."[12] The government filed an objection to the PSR addendum, urging the district court to adopt the grouping calculations in the original PSR.

At sentencing, the district court adopted the grouping calculations as set forth in the original PSR, and in so doing, it grouped only those production of child pornography counts occurring on the same day. The district court's grouping calculus resulted in seven groups and under U.S.S.G. § 3D1.4, the district court added a five-level increase to Wise's offense level, resulting in a sentencing range of 135 to 168 months. The district court sentenced Wise to 168 months in prison and three years of supervised release. Wise filed this timely appeal.

## II. DISCUSSION

---

[12] Wise's proposed calculus would have resulted in a sentence of 78-97 months, which fell below the applicable statutory minimum of 120 months. See 18 U.S.C. § 2251(d).

Wise challenges only the district court's refusal to group his offenses pursuant to U.S.S.G. § 3D1.2(a) or (b). According to Wise, regardless of whether we decide there should be one group (all nine counts together), two groups (production counts together and enticement and travel counts together), or three groups (production counts together and enticement and travel counts in separate groups), his maximum advisory sentence would be the statutory minimum of 120 months. Because the production of child pornography counts comprise five of the seven groups, Wise correctly recognizes that in order for this court to agree with his grouping theory, we must first determine that the district court erred in refusing to group the production counts that occurred on different days. We review the district court's interpretation and application of the grouping rules under the Guidelines de novo. See United States v. Lopez-Urbina, 434 F.3d 750, 762 (5th Cir.), cert. denied, 126 S. Ct. 672 (2005); United States v. Tolbert, 306 F.3d 244, 246 (5th Cir. 2002) ("The decision whether to group offenses is a question of law we review de novo.").

Section 3D1.2 of the Guidelines instructs that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. Separate counts involve "substantially the same harm" when, inter alia, the "counts involve the same victim and the same act or transaction" or the "counts involve the same victim and two or more acts or

transactions connected by a common criminal objective or constituting part of a common scheme or plan."  Id. § 3D1.2(a)-(b).  The commentary reveals that counts are to be grouped together under the guideline when: (1) "they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim"; or (2) they "are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim . . . even if they constitute legally distinct offenses occurring at different times."  Id. § 3D1.2 cmt. n.3 & n.4.

The production of child pornography counts at issue here involve the same victim, but there is a question as to whether they involve the same transaction or scheme.  The examples to the commentary offer some guidance when, as here, the same victim is involved and the conduct takes place on different days.  See id. § 3D1.2 cmt. n.3 ex.6 (stating that "counts are not to be grouped together" when "[t]he defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days") (emphasis added); id. § 3D1.2 cmt. n.4 (stating that "[t]his provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm)"); id. § 3D1.2

-11-

cmt. n.4 ex.5 (noting that "counts are not to be grouped together" when "[t]he defendant is convicted of two counts of rape for raping the same person on different days") (emphasis added).[13]

Courts interpreting the Guidelines must begin with the text of the provision at issue and the plain meaning of the words in the text.  See United States v. Mendez-Villa, 346 F.3d 568, 570 (5th Cir. 2003).  In addition, we must consider the commentary to the Guidelines as authoritative.  See U.S.S.G. § 1B1.7; see also

---

[13]  Wise takes issue with the use of the example concerning rape.  In United States v. Von Loh, 417 F.3d 710 (7th Cir. 2005), the Seventh Circuit recently rejected arguments similar to those Wise makes here.  The defendant in Von Loh argued that the court should not rely on example five in the commentary because the term "rape" covers only forcible assaults and not statutory rape and because the Guidelines intended to treat statutory rape different than example five for grouping decisions.  Id. at 713. The Seventh Circuit was unpersuaded by this argument, stating that:

> Section 3D1.2 of the Guidelines includes cross-references to provisions for both aggravated sexual abuse (§ 2A3.1) and statutory rape (§ 2A3.2).  This indicates that the Sentencing Commission knew when it drafted Example 5 [dealing with rape of the same victim on different days] that the Guidelines recognized multiple forms of rape. It is reasonable to infer from these cross-references that the Sentencing Commission used the more expansive term "rape" to cover various forms of the crime.  That the Guidelines distinguish between forcible and statutory rape in other provisions further supports the inference that the Sentencing Commission's use of more inclusive terminology in Example 5 was intentional.

Id. (internal citation omitted); see also U.S.S.G. § 2L1.2 cmt. n.1(B) (defining "crime of violence" to include both forcible sex offenses and statutory rape); id. § 4B1.2 cmt. n.1 (defining "crime of violence" to include forcible sex offenses only). Because our decision is not wholly reliant on example five and for the same reasons proffered by the Seventh Circuit, we decline to consider Wise's argument other than to note it here.

-12-

Stinson v. United States, 508 U.S. 36, 38 (1993). The district court's decision to treat Wise's production counts occurring on different days as separate harms was consonant with both the plain language of § 3D1.2 and the examples in the commentary. Although this is an issue of first impression in this circuit, the district court's decision was consistent with the circuit courts that have addressed this and closely related issues. See United States v. Searle, 65 F. App'x 343, 346 (2d Cir. 2003) (unpublished) (considering multiple counts of production of child pornography involving one victim and concluding that the district court properly declined to group the counts because the child victim "was harmed separately by the conduct embodied in each count of conviction"); see also Von Loh, 417 F.3d at 714 (rejecting the defendant's arguments that his counts of engaging in sexual acts with a minor should be grouped because they involved the same harm); United States v. Big Medicine, 73 F.3d 994, 997 (10th Cir. 1995) (holding that the defendant's seventy-five instances of sexual contact with the same minor should not be grouped).

Although these cases do not necessarily address the exact factual situation before us, we find them very persuasive in the resolution of this case. The district court here grouped the production counts that took place on the same day but refused to group those occurring on different days on the theory that each time was a separate harm to Doe. Wise made numerous requests for

-13-

sexually explicit photographs of Doe, and each of the photographs that the district court refused to group was taken on a different day in response to Wise's request. Each photograph caused Doe to engage in a separate act of sexually explicit conduct, and the district court did not err in concluding that Doe suffered a separate harm with each occasion of production. See New York v. Ferber, 458 U.S. 747, 757 (1982) (recognizing that the psychological effect of visually recording the sexual exploitation of a child is devastating, and its elimination is of "surpassing importance"); United States v. Grimes, 244 F.3d 375, 382 (5th Cir. 2001) (noting that the harms involved with the production and dissemination of child pornography "occur during the first step--the photographing of the lasciviously exposed minor").

Wise cannot point to any case supporting his theory that the production of child pornography counts occurring on different days should be grouped. The cases he cites are inapposite because they did not have grouping issues before the court or they involved multiple victims. See, e.g., United States v. Newsom, 402 F.3d 780 (7th Cir. 2005), cert. denied, 126 S. Ct. 1455 (2006); United States v. Altman, 901 F.2d 1161 (2d Cir. 1990). As illustrated by the district court's decision to group the production of child pornography counts occurring on the same days (counts two and three and counts four and five), these cases will be fact intensive. Although we do not deal with every

eventuality today, we are convinced that the district court did not err by refusing to group the production of child pornography counts occurring on different days because each time involved a separate harm. See U.S.S.G. § 3D1.2 cmt. n.4 (noting that the grouping provisions do not authorize the grouping of offenses that cannot be considered to represent one composite harm); see also United States v. Bonner, 85 F.3d 522, 526 (11th Cir. 1996) (holding that the district court properly refused to group twenty counts of mailing threatening communications where the victim suffered separate and distinct instances of psychological harm with each separate communication). In light of our conclusion that the district court did not err in refusing to group Wise's production of child pornography counts occurring on different days, we need not address Wise's challenge to the district court's decision not to group his enticement and travel counts. Even assuming arguendo that these two counts should have been grouped, Wise's total units would be above the requisite number of five pursuant to U.S.S.G. § 3D1.4. Thus, we need not reach this issue.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Wise's judgment of conviction and sentence.