NO. 07-06-0084-CR


NO. 07-06-0085-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JANUARY 18, 2007



______________________________




ERIC R. WISE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NOS. 2003-404549 & 2003-404550; HONORABLE BRADLEY S. UNDERWOOD, JUDGE


_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

OPINION


 By two indictments, Appellant, Eric R. Wise, was charged with five counts of
aggravated sexual assault and two counts of indecency with a child. Following the denial
of his motion to suppress, Appellant entered open pleas of guilty to all counts, and the case
proceeded to the punishment phase. The trial court sentenced Appellant to fifty years
confinement on each of the five convictions for aggravated sexual assault and ten years
confinement on each of the two convictions for indecency with a child. All seven sentences
were to run concurrently. (1) Presenting three issues to challenge all seven convictions,
Appellant questions whether (1) the sentences imposed were excessive and grossly
disproportionate to the facts; (2) the trial court abused its discretion in denying his motion
to suppress because the affidavit presented in support of the search warrant of his home
was based upon material misinformation or omissions, and there was no nexus shown
between the search of his home and the alleged crimes; and (3) the prosecutor's use of
"leading questions" prejudiced presentation of the evidence at the suppression hearing. 
We affirm.

Background


 The record establishes that Appellant, a thirty-seven year old male from Cedar
Rapids, Iowa, had been communicating over the Internet for almost a year with KMB, a
fourteen year old female from Kenosha, Wisconsin. According to KMB, Appellant knew
she was fourteen years old and represented to her that he was twenty-two years old. On
August 19, 2003, Appellant traveled to Wisconsin to meet KMB at a park. They spent a
few hours together, hugged and French kissed. KMB testified that Appellant pulled her

 onto his lap, but did not make any sexual advances. KMB told Appellant she needed to
return home for dinner, but they arranged to communicate later that evening. Appellant
gave KMB the telephone number and room number at the local hotel where he was staying.

 KMB, feeling uneasy about her encounter with Appellant, disclosed the incident to
her older sister, her mother, and father. As a result, Kenosha, Wisconsin Police
Department was called in to investigate. A search of KMB's computer disclosed
communications between her and Appellant, as well as photographs of Appellant. 

 Kenosha, Wisconsin Police Officers were dispatched to Appellant's hotel room where
he voluntarily consented to a search of his room and vehicle. Items discovered in the hotel
room included the following: 

 

 a torn and empty condom wrapper and an empty three-pack condom
box behind the night stand located between the two beds;


 

 a prescription bottle belonging to Appellant with one-half of a Viagra
tablet; 
 a stained towel;


  Appellant's wallet which contained numerous phone numbers on a
post-it type paper;

 

 Appellant's car keys and his Iowa driver's license; and
 a paper on the night stand with directions to the park where he met
KMB.



 Items found in Appellant's vehicle included:

 

 a video camera containing a tape;


  a tripod;


 a backpack;
 a bundle of yellow nylon tow rope;
 a baggie containing various pills;
 a camera bag containing a 35MM Canon Rebel camera and flash; and
 a green cell phone.



 The evidence was turned over to the Kenosha, Wisconsin Police Department. The
videotape found in the seized camera was viewed by investigators and according to a police
report: 

 [t]he tape showed what appeared to be a M/W recording a F/W (age or
person unknown) sleeping in the nude under the covers on a bed. . . . Eric
and the unknown F/W then engage in sexual intercourse, where Eric looks at
the camera once and the F/W appears to have no knowledge that the camera
is there. Note, that the F/W also appears to be in a lethargic state.


 Wisconsin authorities arrested Appellant and charged him with child enticement and
use of a computer to facilitate a child sex crime according to Wisconsin statutes. (2) On
August 20, 2003, Detective Ric Bentz, of the Kenosha, Wisconsin Police Department
drafted two affidavits in support of search warrants; one for Appellant's home in Cedar
Rapids, Iowa, and another to determine the origin of electronic communications and other
information from a screen name believed to belong to Appellant from an America Online
account. Detective Bentz then contacted Detective Melissa Henderson, of the Cedar
Rapids, Iowa Police Department, for assistance in obtaining an Iowa search warrant for
Appellant's home.

 Detective Henderson presented an Application for Search Warrant which not only
included her own affidavit but also incorporated the affidavit of Detective Bentz. The
affidavit of Detective Bentz provides in relevant part:

 The defendant then asked to meet the victim and he traveled across state
lines from Cedar Rapid [sic] Iowa to Kenosha WI on August 19, 2003 to meet
KMB DOB 09/28/88 at Washington Bowl. The defendant meet [sic] the victim
and took [sic] to the area of the swing sets and "French Kissed" KMB DOB
09/28/88 there. When officers arrived at The Holiday Inn Express the subject
had an open box of condoms one open condom package, several pills of an
unknown substance, an 8mm camera and Viagra tablets in the hotel room. 
The subject voluntarily consented to allow officers to search the room and his
vehicle and officers recovered a camera tripod and more video tapes. One
tape shows the defendant having sexual intercourse with a female subject
that appears to be under the influence of alcohol or a controlled substance.
. . .


 The Iowa search warrant was approved by a magistrate at 4:01 p.m. on August 20,
2003, and was executed by Cedar Rapids, Iowa law enforcement officers at approximately
5:00 p.m. that same day. The warrant authorized a search of Appellant's home for
evidence in connection with the crimes of child enticement and use of a computer to
facilitate a child sex crime. The evidence sought was described as follows:

 Any and all electronic devices, which are capable of analyzing, sorting,
creating, displaying, converting, or transmitting electronic or magnetic
impulses or data, including but not limited to: digital camera, computer, lap-top computer, central processing units, external drives or storage media,
terminals or video display units, together with peripheral equipment such as
keyboards, modem, acoustic couplers, automatic dialers, electronic tone
generating devices, printing devices, internal storage including hard drives,
computer software programs, together with instruction manuals and
associated documentation; the photo designs floppy disk and CD disks for
storage of electronic media, any notes papers documentation in handwriting,
typed, photocopied, or printed form, or stored on computer printouts,
magnetic tape, cassettes, disks, diskettes, photo-optical devices, or any other
medium, that were used to communicate with the victim over the Internet. 
Any controlled substance as defined in Chapter 124 of the Iowa Code,
including but not limited to suspicious pills. 


 Following execution of the Iowa search warrant of Appellant's home, officers seized
a computer, CDs, photographs, videotapes, magazines, and printed chat logs. In addition,
a locked Brinks home safe bolted to a closet floor was discovered during the search and
removed to the police station. Iowa authorities gained entry to the Brinks home safe and
found, among other items, computer CDs, floppy disks, and a videotape. All evidence
seized was turned over to Wisconsin authorities for analysis.

 Wisconsin authorities viewed the videotape found in the safe which revealed
Appellant and a young female between ages thirteen and fifteen engaging in sexual acts. 
Announcements from a radio station could be heard playing in the background of the
videotape. The radio station was traced to Lubbock, Texas. Other evidence seized
included a photo of the young female depicted in the videotape standing in front of a
shopping mall located in Lubbock. The photograph and videotape were forwarded to the
Lubbock Police Department. The girl in the photograph was wearing a high school letter
jacket that was traced to a local high school. The young girl was then identified through the
school's records as ACT, a female born on March 5, 1989. 

 In October 2003, ACT's parents were contacted by the Lubbock Police Department 
to inform them about an aggravated sexual assault investigation involving ACT. On October
2, 2003, ACT gave a written statement to a detective averring she first began
communicating by computer with Appellant during the summer of 2002. According to her
statement, in December 2002, Appellant expressed his desire to travel to Lubbock to meet 
her. On January 16, 2003, he sent her an e-mail in which he indicated he was leaving for
Lubbock and expected to arrive the next day. He also expressed that "[t]omorrow will be
the first big day of our life together." When Appellant arrived in Lubbock, he contacted ACT;
they met several times over the course of the weekend and engaged in sexual encounters. 
ACT was thirteen years of age at the time. ACT was aware that Appellant recorded one of
their sexual escapades on videotape, which was the videotape discovered in the safe in
Appellant's Iowa home. After the Wisconsin and Iowa investigations lead authorities to the
Lubbock case, Appellant was charged in Lubbock County with two counts of indecency with
a child and five counts of aggravated sexual assault for his involvement with ACT.

Analysis


 By his first issue, Appellant maintains the sentences imposed were excessive and
grossly disproportionate to the facts in violation of his Eighth Amendment right to be free
from cruel and unusual punishment. (3) We disagree. After the trial court pronounced
sentence, defense counsel did not present any objections. Neither was a motion for new
trial filed complaining of the sentence. Appellant did, however, make a bill of exception to
offer examples of sentences for sexual assaults in other jurisdictions. But the bill preceded
conclusion of the punishment phase and pronouncement of sentence. 

 In order to preserve a complaint for appellate review, the record must show a timely
request, objection, or motion. Tex. R. App. P. 33.1(a)(1). Constitutional rights, including
the right to be free from cruel and unusual punishment, may be waived. Castaneda v.
State, 135 S.W.3d 719, 723 (Tex.App.-Dallas 2003, no pet.). Consequently, Appellant
preserved nothing for review and issue one is resolved against Appellant. 

 Appellant contends by his second issue that the trial court should have granted his
motion to suppress illegally obtained evidence. Specifically, he argues (1) the affidavit in
support of the search warrant of his home was based upon material misinformation and
omissions and (2) no nexus was shown between the search of his Iowa home and the
alleged Wisconsin crimes of child enticement and use of a computer to facilitate a child sex
crime. We disagree.

 Appellant filed a motion to suppress the evidence obtained from his home and also
requested a Franks v. Delaware hearing in his motion. (4) He alleged, among other things,
that Detective Bentz's affidavit contained material misrepresentations and omissions made
intentionally or with reckless disregard for the truth. Detectives Bentz and Henderson both
testified at the hearing. Following presentation of the evidence, the State acknowledged
discrepancies between Detective Bentz's affidavit and his testimony, but nevertheless
argued that Appellant failed to meet his burden under Franks to show that Bentz
intentionally and knowingly made false statements or that he made statements with reckless
disregard for the truth. At the conclusion of the hearing, the trial court ruled:

 [w]ith respect to the argument that Detective Bentz perpetrated fraud on the
magistrate that issued the search warrant, I strongly disagree with that. There
are statements that are conflicting for sure. There are statements that appear
to be just wrong.

 But looking at everything from a totality of the circumstances and
understanding that Detective Bentz was talking with the other officers prior to
the other officers writing their reports, writing the inventories, the things that
they put in writing that [defense counsel] is referring to now, taking a look at
all that, I don't find that Detective Bentz intentionally misled anyone. I also
don't find that - or I do find that he did not make statements with reckless
disregard as to their truth.

 I think there was some miscommunication in this case. My opinion is that's
what it amounts to.

 Even if you throw all of that out, however, the Court finds that there's still
probable cause to issue the search warrant for the reasons stated, the
underlying reason for the issuance of the search warrant, the reason that they
were going to the magistrate in the first place.


Following its reasoning, the trial court denied Appellant's motion to suppress. Appellant
then entered open pleas of guilty to all counts. 

 A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); Oles v. State, 993 S.W.2d
103, 106 (Tex.Crim.App. 1999). We apply a bifurcated standard of review giving almost
total deference to the trial court's determination of historical facts and reviewing de novo its
application of the law to those facts. Laney v. State, 117 S.W.3d 854, 857 (Tex.Crim.App.
2003). See also Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Absent
findings of fact, we view the evidence in the light most favorable to the trial court's ruling and
assume the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record. (5) State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App.
2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). At a suppression
hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to
be given their testimony. Wyatt v. State, 23 S.W.2d 18, 23 (Tex.Crim.App. 2000).

 Under Franks v. Delaware, a defendant bears the burden of showing by a
preponderance of the evidence at a suppression hearing that an affidavit contains a false
statement made either knowingly and intentionally or with reckless disregard for the truth. 
438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). If a defendant makes an offer
of proof in support of the allegations and demonstrates that if the false material of the
affidavit is excised and the abridged affidavit is insufficient to support probable cause, the
warrant must be voided and the fruits of the search "excluded to the same extent as if
probable cause was lacking on the face of the affidavit." Id. See also Hinojosa v. State, 4
S.W.3d 240, 246-47 (Tex.Crim.App. 1999). The Supreme Court declined to extend the rule
of exclusion to instances where police are merely negligent in collecting facts. Franks, 438
U.S. at 154. See also Dancy v. State, 728 S.W.2d 772, 783 (Tex.Crim.App. 1987), cert.
denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (providing that a misstatement
in an affidavit that is the result of simple negligence or inadvertence will not invalidate a
warrant). Additionally, at a Franks hearing, the trial judge is owed great deference as the
sole fact-finder and judge of the witnesses' credibility. Janecka v. State, 937 S.W.2d 456,
462 (Tex.Crim.App. 1996). The trial court's ruling will be overruled only if it is outside the
bounds of reasonable disagreement. Id.

 Great deference should be given to a magistrate's determination of probable cause. 
Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Swearingen
v. State, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004). Warrants should not thereafter
be invalidated through "hypertechnical" interpretation of their supporting affidavits. Gates,
462 U.S. at 236. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the
"veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair
probability that contraband or evidence of a crime will be found in a particular place. Gates,
462 U.S. at 238. The duty of a reviewing court is simply to determine whether, considering
the totality of the circumstances, the magistrate had a substantial basis for concluding that
probable cause existed to support the issuance of the warrant when viewing the affidavit. 
Id. at 238-39. 

 Appellant argues the magistrate in Iowa was mislead into issuing a search warrant
based upon the following material misinformation and or omissions contained in Detective
Bentz's affidavit:



Bentz's Affidavit
1. "The [Appellant] meet (sic) the victim
and took [her] to the area of the swing
sets and 'French Kissed' KMB DOB
9/28/88 there." 

 

2. "[T]he subject had an open box of
condoms one open condom package .
. ." 
 
 
 


3. "[T]he subject had . . . Viagra tablets in
the hotel room." 



 


 

4. "[T]he subject had . . .several pills of
an unknown substance . . . in the hotel
room." 

 
 

5. "[T]he subject had . . . an 8mm camera
. . . in the hotel room."



6. "The subject voluntarily consented to
allow officers to search the room and his
vehicle and officers recovered a camera
tripod and more video tapes."


7. "One tape shows the [Appellant]
having sexual intercourse with a female
subject that appears to be under the
influence of alcohol or a controlled
substance."


Alleged Misinformation or Omission


1. KMB was accompanied to the park by
a friend. 
 
 


2. A box of condoms was found behind a
night stand between two beds in the hotel
room. Nothing connected Appellant to the
condoms and there was no way to
determine whether Appellant had even
touched them.


3. There was one-half of a Viagra tablet
found in a prescription bottle belonging to
the Appellant. The prescription bottle was
found in Appellant's vehicle, not the hotel
room. 


4. The pills were not illegal, nor were they
a controlled substance. The pills were
found in Appellant's vehicle, not the hotel
room.


5. The 8mm camera was found in
Appellant's vehicle.



6. Only one videotape was recovered and
it was recovered from the 8mm camera.



 

7. The affidavit fails to state that the
female appeared to be an adult.
 The State acknowledges that Detective Bentz's affidavit contained mistakes and
omissions, but explains they were not made intentionally nor with reckless disregard for the
truth. At the suppression hearing, Bentz clarified discrepancies regarding the condom box
and open package, the 8 millimeter camera, and Viagra prescription by explaining that he
relied on verbal information from patrol officers and detectives to draft his affidavit. He did
not yet have written reports to reference and needed to act immediately to prevent
destruction of any electronic evidence. He did not mention that the female in the videotape
found in the 8 millimeter camera appeared to be an adult because he was not positive of
her age. The "several pills of an unknown substance" mentioned in the affidavit were
determined to be over-the-counter allergy pills after the affidavit was drafted. During
redirect examination, Detective Bentz denied that his affidavit contained either false
statements or statements made with reckless disregard for the truth. 

 Deferring to the trial court's conclusion that Detective Bentz's affidavit did not contain
either false statements or statements with reckless disregard for the truth, we cannot
conclude the trial court abused its discretion. Accordingly, we find against Appellant on his
contention that the Iowa magistrate was mislead into issuing the search warrant based upon
any misstatements of fact.

 The Texas Court of Criminal Appeals has not yet determined whether a Franks
analysis applies to omissions as well as false statements. See Massey v. State, 933
S.W.2d 141, 146 (Tex.Crim.App. 1996). However, in Renteria v. State, 206 S.W.3d 689,
704 (Tex.Crim.App. 2006), the Court assumed application of Franks to omissions and
concluded that even if information omitted from an affidavit in support of a search warrant
had been included, sufficient probable cause existed to issue the search warrant.

 As to omissions from the affidavit, we also conclude Appellant did not establish that
certain facts were omitted intentionally or with reckless disregard for their truth. See
Massey, 933 S.W.2d at 146. Therefore, even assuming that Franks applies to the alleged
omissions, we believe the Iowa magistrate would have had sufficient probable cause to
issue the search warrant even if the omissions had been included in Detective Henderson's
affidavit. The search warrant affidavit would still have averred that Appellant had been
communicating over the Internet and via electronic mail, as well as telephone
conversations, with KMB, a minor, with the intent of having a sexual relationship with KMB. 
Again deferring to the trial court's conclusion, we cannot say the trial court abused its
discretion in finding that the Iowa magistrate would have had sufficient probable cause to
issue the search warrant.

 The second argument advanced by Appellant in his suppression issue is the lack of
nexus between the search of his home in Iowa and the charged offenses in Wisconsin of
child enticement and use of a computer to facilitate a child sex crime. He urges that the
search of his home resulted in a "fishing expedition."

 The basic purpose of the Fourth Amendment is to safeguard the privacy and security
of individuals against arbitrary invasion of governmental officials. Berger v. New York, 388
U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The requirement that a search
warrant be specific prohibits general searches and prevents the vesting of complete
discretion in the officer who executes the warrant. Id. at 55-56. "Mere evidence," as
distinguished from fruits or instrumentalities of a crime, may be seized, provided there is a
nexus between the items seized and the crimes under investigation. Warden, Maryland
Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). 
However, nexus between items to be seized and criminal behavior is automatically provided
in the case of fruits or instrumentalities. Id.

 In the instant case, most of the items enumerated in the search warrant, i.e., camera,
computers, and items related thereto, constituted fruits or instrumentalities of the charged
offenses and nexus was automatically provided. Appellant's argument that nexus was not
established between the search of his home and the charged offenses is misplaced. Both
arguments comprising Appellant's challenge to the trial court's denial of his motion to
suppress are overruled.

 By his final issue, Appellant claims prejudice in the prosecutor's use of leading
questions during the motion to suppress hearing. We disagree. Rule 611(c) of the Texas
Rules of Evidence does not prohibit the use of leading questions. See Wyatt, 23 S.W.3d
28-29. It provides that leading questions should not be used during direct examination of
a witness except as necessary to develop the testimony of that witness. Tex. R. Evid.
611(c). It is within the sound discretion of the trial court to permit the use of leading
questions during direct examination. Wyatt, 23 S.W.3d at 28. To establish abuse of
discretion, an appellant must show he was unduly prejudiced by use of leading questions. 
Hernandez v. State, 643 S.W.2d 397, 400 (Tex.Crim.App. 1982), cert. denied, 462 U.S.
1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983).

 Appellant recognizes that the use of leading questions seldom results in reversible
error. Uhl v. State, 479 S.W.2d 55, 57 (Tex.Crim.App. 1972). However, relying on State
v. Hosey, 348 S.E.2d 805 (N.C. 1986), he argues that when leading questions result in
testimony from the prosecutor rather than the witness, reversible error occurs. We are
bound to follow the law as it is pronounced by the Texas Court of Criminal Appeals and see
no compelling reason to apply the rationale of Hosey in this case. See Swilley v. McCain,
374 U.S. 871, 875 (Tex. 1964). 

 According to Appellant, approximately 122 leading questions were asked of Detective
Bentz during direct examination and 121 leading questions during re-direct examination. 
He argues the questions suggested the answers. Appellant interjected, and the trial court
sustained, five leading question objections early during the suppression hearing. Following
the fifth objection, the trial court admonished the prosecutor it wanted to "hear the witness's
testimony." No further leading question objections were made after the prosecutor was
admonished despite Appellant's calculations that several hundred leading questions were
asked. By failing to object and obtain an adverse ruling each time the prosecutor asked a
leading question, Appellant has not preserved this issue for review. See Tex. R. App. P.
33.1(a); Garner v. State, 939 S.W.2d 802, 807 (Tex.App.-Fort Worth 1997, pet. ref'd). See
generally Hudson v. State, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984) (holding that
defense counsel must object each time allegedly inadmissible evidence is offered). Issue
three is overruled. 

 Having overruled Appellant's issues, the trial court's judgments are affirmed.


 Patrick A. Pirtle

 Justice

 


Publish.
1. Appellant was also convicted in Federal court of producing child pornography,
enticement of a child, and traveling across State lines with intent to engage in a sexual act
with a juvenile, which convictions were affirmed in United States v. Wise, 447 F.3d 440 (5th
Cir. 2006). He was sentenced to 168 months confinement and three years of supervised
release. Id. at 445.
2. A person is guilty of child enticement if with intent to commit certain enumerated
acts, he "causes or attempts to cause any child who has not attained the age of 18 years
to go into any vehicle, building, room, or secluded place." A person is guilty of use of a
computer to facilitate a child sex crime if that person "uses a computerized communication
system to communicate with an individual who the actor believes or has reason to believe
has not attained the age of 16 years with intent to have sexual contact or sexual
intercourse with the individual in violation of s. 948.02 (1) or (2) is guilty of a Class C
felony." 
3. In support of his argument, Appellant relies on Solem v. Helm, 463 U.S. 277, 290
103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). It is, however, no longer controlling following the
decision in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991),
that "Solem was simply wrong; the Eighth Amendment contains no proportionality
guarantee."
4. Franks held that where a defendant makes a substantial preliminary showing that
a false statement in a warrant affidavit was made knowingly and intentionally, or with
reckless disregard for the truth, and if that statement was necessary to a finding of
probable cause, the Fourth Amendment requires a hearing at defendant's request. Franks
v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
5. Effective June 28, 2006, the trial court shall make findings of fact when requested
by the losing party. See State v. Cullen, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006). If
no findings of fact are requested, State v. Ross, 32 S.W.3d 853 (Tex.Crim.App. 2000)
continues to control. Id.