NO. 07-06-0084-CR
NO. 07-06-0085-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 18, 2007

_____

ERIC R. WISE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NOS. 2003-404549 & 2003-404550; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

By two indictments, Appellant, Eric R. Wise, was charged with five counts of aggravated sexual assault and two counts of indecency with a child. Following the denial of his motion to suppress, Appellant entered open pleas of guilty to all counts, and the case proceeded to the punishment phase. The trial court sentenced Appellant to fifty years

confinement on each of the five convictions for aggravated sexual assault and ten years confinement on each of the two convictions for indecency with a child. All seven sentences were to run concurrently.[1] Presenting three issues to challenge all seven convictions, Appellant questions whether (1) the sentences imposed were excessive and grossly disproportionate to the facts; (2) the trial court abused its discretion in denying his motion to suppress because the affidavit presented in support of the search warrant of his home was based upon material misinformation or omissions, and there was no nexus shown between the search of his home and the alleged crimes; and (3) the prosecutor's use of "leading questions" prejudiced presentation of the evidence at the suppression hearing. We affirm.

## Background

The record establishes that Appellant, a thirty-seven year old male from Cedar Rapids, Iowa, had been communicating over the Internet for almost a year with KMB, a fourteen year old female from Kenosha, Wisconsin. According to KMB, Appellant knew she was fourteen years old and represented to her that he was twenty-two years old. On August 19, 2003, Appellant traveled to Wisconsin to meet KMB at a park. They spent a few hours together, hugged and French kissed. KMB testified that Appellant pulled her

---

[1]Appellant was also convicted in Federal court of producing child pornography, enticement of a child, and traveling across State lines with intent to engage in a sexual act with a juvenile, which convictions were affirmed in *United States v. Wise*, 447 F.3d 440 (5th Cir. 2006). He was sentenced to 168 months confinement and three years of supervised release. *Id.* at 445.

onto his lap, but did not make any sexual advances. KMB told Appellant she needed to return home for dinner, but they arranged to communicate later that evening. Appellant gave KMB the telephone number and room number at the local hotel where he was staying.

KMB, feeling uneasy about her encounter with Appellant, disclosed the incident to her older sister, her mother, and father. As a result, Kenosha, Wisconsin Police Department was called in to investigate. A search of KMB's computer disclosed communications between her and Appellant, as well as photographs of Appellant.

Kenosha, Wisconsin Police Officers were dispatched to Appellant's hotel room where he voluntarily consented to a search of his room and vehicle. Items discovered in the hotel room included the following:

- a torn and empty condom wrapper and an empty three-pack condom box behind the night stand located between the two beds;
- a prescription bottle belonging to Appellant with one-half of a Viagra tablet;
- a stained towel;
- Appellant's wallet which contained numerous phone numbers on a post-it type paper;
- Appellant's car keys and his Iowa driver's license; and
- a paper on the night stand with directions to the park where he met KMB.

Items found in Appellant's vehicle included:

- a video camera containing a tape;

3

- a tripod;

- a backpack;

- a bundle of yellow nylon tow rope;

- a baggie containing various pills;

- a camera bag containing a 35MM Canon Rebel camera and flash; and

- a green cell phone.

The evidence was turned over to the Kenosha, Wisconsin Police Department. The videotape found in the seized camera was viewed by investigators and according to a police report:

> [t]he tape showed what appeared to be a M/W recording a F/W (age or person unknown) sleeping in the nude under the covers on a bed. . . . Eric and the unknown F/W then engage in sexual intercourse, where Eric looks at the camera once and the F/W appears to have no knowledge that the camera is there. Note, that the F/W also appears to be in a lethargic state.

Wisconsin authorities arrested Appellant and charged him with child enticement and use of a computer to facilitate a child sex crime according to Wisconsin statutes.[2] On August 20, 2003, Detective Ric Bentz, of the Kenosha, Wisconsin Police Department drafted two affidavits in support of search warrants; one for Appellant's home in Cedar

---

[2]A person is guilty of *child enticement* if with intent to commit certain enumerated acts, he "causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room, or secluded place." A person is guilty of *use of a computer to facilitate a child sex crime* if that person "uses a computerized communication system to communicate with an individual who the actor believes or has reason to believe has not attained the age of 16 years with intent to have sexual contact or sexual intercourse with the individual in violation of s. 948.02 (1) or (2) is guilty of a Class C felony."

4

Rapids, Iowa, and another to determine the origin of electronic communications and other information from a screen name believed to belong to Appellant from an America Online account. Detective Bentz then contacted Detective Melissa Henderson, of the Cedar Rapids, Iowa Police Department, for assistance in obtaining an Iowa search warrant for Appellant's home.

Detective Henderson presented an *Application for Search Warrant* which not only included her own affidavit but also incorporated the affidavit of Detective Bentz. The affidavit of Detective Bentz provides in relevant part:

> The defendant then asked to meet the victim and he traveled across state lines from Cedar Rapid [sic] Iowa to Kenosha WI on August 19, 2003 to meet **KMB DOB 09/28/88** at Washington Bowl. The defendant meet [sic] the victim and took [sic] to the area of the swing sets and "French Kissed" **KMB DOB 09/28/88** there. When officers arrived at The Holiday Inn Express the subject had an open box of condoms one open condom package, several pills of an unknown substance, an 8mm camera and Viagra tablets in the hotel room. The subject voluntarily consented to allow officers to search the room and his vehicle and officers recovered a camera tripod and more video tapes. One tape shows the defendant having sexual intercourse with a female subject that appears to be under the influence of alcohol or a controlled substance. . . .

The Iowa search warrant was approved by a magistrate at 4:01 p.m. on August 20, 2003, and was executed by Cedar Rapids, Iowa law enforcement officers at approximately 5:00 p.m. that same day. The warrant authorized a search of Appellant's home for evidence in connection with the crimes of child enticement and use of a computer to facilitate a child sex crime. The evidence sought was described as follows:

5

Any and all electronic devices, which are capable of analyzing, sorting, creating, displaying, converting, or transmitting electronic or magnetic impulses or data, including but not limited to: digital camera, computer, lap-top computer, central processing units, external drives or storage media, terminals or video display units, together with peripheral equipment such as keyboards, modem, acoustic couplers, automatic dialers, electronic tone generating devices, printing devices, internal storage including hard drives, computer software programs, together with instruction manuals and associated documentation; the photo designs floppy disk and CD disks for storage of electronic media, any notes papers documentation in handwriting, typed, photocopied, or printed form, or stored on computer printouts, magnetic tape, cassettes, disks, diskettes, photo-optical devices, or any other medium, that were used to communicate with the victim over the Internet. Any controlled substance as defined in Chapter 124 of the Iowa Code, including but not limited to suspicious pills.

Following execution of the Iowa search warrant of Appellant's home, officers seized a computer, CDs, photographs, videotapes, magazines, and printed chat logs. In addition, a locked Brinks home safe bolted to a closet floor was discovered during the search and removed to the police station. Iowa authorities gained entry to the Brinks home safe and found, among other items, computer CDs, floppy disks, and a videotape. All evidence seized was turned over to Wisconsin authorities for analysis.

Wisconsin authorities viewed the videotape found in the safe which revealed Appellant and a young female between ages thirteen and fifteen engaging in sexual acts. Announcements from a radio station could be heard playing in the background of the videotape. The radio station was traced to Lubbock, Texas. Other evidence seized included a photo of the young female depicted in the videotape standing in front of a shopping mall located in Lubbock. The photograph and videotape were forwarded to the

6

Lubbock Police Department. The girl in the photograph was wearing a high school letter jacket that was traced to a local high school. The young girl was then identified through the school's records as ACT, a female born on March 5, 1989.

In October 2003, ACT's parents were contacted by the Lubbock Police Department to inform them about an aggravated sexual assault investigation involving ACT. On October 2, 2003, ACT gave a written statement to a detective averring she first began communicating by computer with Appellant during the summer of 2002. According to her statement, in December 2002, Appellant expressed his desire to travel to Lubbock to meet her. On January 16, 2003, he sent her an e-mail in which he indicated he was leaving for Lubbock and expected to arrive the next day. He also expressed that "[t]omorrow will be the first big day of our life together." When Appellant arrived in Lubbock, he contacted ACT; they met several times over the course of the weekend and engaged in sexual encounters. ACT was thirteen years of age at the time. ACT was aware that Appellant recorded one of their sexual escapades on videotape, which was the videotape discovered in the safe in Appellant's Iowa home. After the Wisconsin and Iowa investigations lead authorities to the Lubbock case, Appellant was charged in Lubbock County with two counts of indecency with a child and five counts of aggravated sexual assault for his involvement with ACT.

**Analysis**

By his first issue, Appellant maintains the sentences imposed were excessive and grossly disproportionate to the facts in violation of his Eighth Amendment right to be free

from cruel and unusual punishment.[3] We disagree. After the trial court pronounced sentence, defense counsel did not present any objections. Neither was a motion for new trial filed complaining of the sentence. Appellant did, however, make a bill of exception to offer examples of sentences for sexual assaults in other jurisdictions. But the bill preceded conclusion of the punishment phase and pronouncement of sentence.

In order to preserve a complaint for appellate review, the record must show a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived. *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex.App.–Dallas 2003, no pet.). Consequently, Appellant preserved nothing for review and issue one is resolved against Appellant.

Appellant contends by his second issue that the trial court should have granted his motion to suppress illegally obtained evidence. Specifically, he argues (1) the affidavit in support of the search warrant of his home was based upon material misinformation and omissions and (2) no nexus was shown between the search of his Iowa home and the alleged Wisconsin crimes of child enticement and use of a computer to facilitate a child sex crime. We disagree.

---

[3]In support of his argument, Appellant relies on *Solem v. Helm*, 463 U.S. 277, 290 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). It is, however, no longer controlling following the decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee."

8

Appellant filed a motion to suppress the evidence obtained from his home and also requested a *Franks v. Delaware* hearing in his motion.[4]  He alleged, among other things, that Detective Bentz's affidavit contained material misrepresentations and omissions made intentionally or with reckless disregard for the truth.  Detectives Bentz and Henderson both testified at the hearing.  Following presentation of the evidence, the State acknowledged discrepancies between Detective Bentz's affidavit and his testimony, but nevertheless argued that Appellant failed to meet his burden under *Franks* to show that Bentz intentionally and knowingly made false statements or that he made statements with reckless disregard for the truth.  At the conclusion of the hearing, the trial court ruled:

> [w]ith respect to the argument that Detective Bentz perpetrated fraud on the magistrate that issued the search warrant, I strongly disagree with that.  There are statements that are conflicting for sure.  There are statements that appear to be just wrong.
>
> But looking at everything from a totality of the circumstances and understanding that Detective Bentz was talking with the other officers prior to the other officers writing their reports, writing the inventories, the things that they put in writing that [defense counsel] is referring to now, taking a look at all that, I don't find that Detective Bentz intentionally misled anyone.  I also don't find that – or I do find that he did not make statements with reckless disregard as to their truth.
>
> I think there was some miscommunication in this case.  My opinion is that's what it amounts to.
>
> Even if you throw all of that out, however, the Court finds that there's still probable cause to issue the search warrant for the reasons stated, the

---

[4]*Franks* held that where a defendant makes a substantial preliminary showing that a false statement in a warrant affidavit was made knowingly and intentionally, or with reckless disregard for the truth, and if that statement was necessary to a finding of probable cause, the Fourth Amendment requires a hearing at defendant's request. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

9

underlying reason for the issuance of the search warrant, the reason that they were going to the magistrate in the first place.

Following its reasoning, the trial court denied Appellant's motion to suppress. Appellant then entered open pleas of guilty to all counts.

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). We apply a bifurcated standard of review giving almost total deference to the trial court's determination of historical facts and reviewing de novo its application of the law to those facts. *Laney v. State*, 117 S.W.3d 854, 857 (Tex.Crim.App. 2003). *See also Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Absent findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.[5] *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Wyatt v. State*, 23 S.W.2d 18, 23 (Tex.Crim.App. 2000).

---

[5]Effective June 28, 2006, the trial court shall make findings of fact when requested by the losing party. *See State v. Cullen,* 195 S.W.3d 696, 699 (Tex.Crim.App. 2006). If no findings of fact are requested, *State v. Ross*, 32 S.W.3d 853 (Tex.Crim.App. 2000) continues to control. *Id.*

Under *Franks v. Delaware*, a defendant bears the burden of showing by a preponderance of the evidence at a suppression hearing that an affidavit contains a false statement made either knowingly and intentionally or with reckless disregard for the truth. 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). If a defendant makes an offer of proof in support of the allegations and demonstrates that if the false material of the affidavit is excised and the abridged affidavit is insufficient to support probable cause, the warrant must be voided and the fruits of the search "excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id*. *See also Hinojosa v. State*, 4 S.W.3d 240, 246-47 (Tex.Crim.App. 1999). The Supreme Court declined to extend the rule of exclusion to instances where police are merely negligent in collecting facts. *Franks*, 438 U.S. at 154. *See also Dancy v. State*, 728 S.W.2d 772, 783 (Tex.Crim.App. 1987), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (providing that a misstatement in an affidavit that is the result of simple negligence or inadvertence will not invalidate a warrant). Additionally, at a *Franks* hearing, the trial judge is owed great deference as the sole fact-finder and judge of the witnesses' credibility. *Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App. 1996). The trial court's ruling will be overruled only if it is outside the bounds of reasonable disagreement. *Id*.

Great deference should be given to a magistrate's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004). Warrants should not thereafter be invalidated through "hypertechnical" interpretation of their supporting affidavits. *Gates*,

11

462 U.S. at 236. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238. The duty of a reviewing court is simply to determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the warrant when viewing the affidavit. *Id*. at 238-39.

Appellant argues the magistrate in Iowa was mislead into issuing a search warrant based upon the following material misinformation and or omissions contained in Detective Bentz's affidavit:

| Bentz's Affidavit | Alleged Misinformation or Omission |
|---|---|
| 1. "The [Appellant] meet (sic) the victim and took [her] to the area of the swing sets and 'French Kissed' KMB DOB 9/28/88 there." | 1. KMB was accompanied to the park by a friend. |
| 2. "[T]he subject had an open box of condoms one open condom package . . ." | 2. A box of condoms was found behind a night stand between two beds in the hotel room. Nothing connected Appellant to the condoms and there was no way to determine whether Appellant had even touched them. |
| 3. "[T]he subject had . . . Viagra *tablets* in the hotel room." | 3. There was one-half of a Viagra tablet found in a prescription bottle belonging to the Appellant. The prescription bottle was |

12

4. "[T]he subject had . . .several pills of an unknown substance . . . in the hotel room."

4. The pills were not illegal, nor were they a controlled substance. The pills were found in Appellant's vehicle, not the hotel room.

5. "[T]he subject had . . . an 8mm camera . . . in the hotel room."

5. The 8mm camera was found in Appellant's vehicle.

6. "The subject voluntarily consented to allow officers to search the room and his vehicle and officers recovered a camera tripod and more video *tapes*."

6. Only one videotape was recovered and it was recovered from the 8mm camera.

7. "One tape shows the [Appellant] having sexual intercourse with a female subject that appears to be under the influence of alcohol or a controlled substance."

7. The affidavit fails to state that the female appeared to be an adult.

The State acknowledges that Detective Bentz's affidavit contained mistakes and omissions, but explains they were not made intentionally nor with reckless disregard for the truth. At the suppression hearing, Bentz clarified discrepancies regarding the condom box and open package, the 8 millimeter camera, and Viagra prescription by explaining that he relied on verbal information from patrol officers and detectives to draft his affidavit. He did not yet have written reports to reference and needed to act immediately to prevent destruction of any electronic evidence. He did not mention that the female in the videotape found in the 8 millimeter camera appeared to be an adult because he was not positive of her age. The "several pills of an unknown substance" mentioned in the affidavit were

13

determined to be over-the-counter allergy pills after the affidavit was drafted. During redirect examination, Detective Bentz denied that his affidavit contained either false statements or statements made with reckless disregard for the truth.

Deferring to the trial court's conclusion that Detective Bentz's affidavit did not contain either false statements or statements with reckless disregard for the truth, we cannot conclude the trial court abused its discretion. Accordingly, we find against Appellant on his contention that the Iowa magistrate was mislead into issuing the search warrant based upon any misstatements of fact.

The Texas Court of Criminal Appeals has not yet determined whether a *Franks* analysis applies to omissions as well as false statements. *See Massey v. State*, 933 S.W.2d 141, 146 (Tex.Crim.App. 1996). However, in *Renteria v. State*, 206 S.W.3d 689, 704 (Tex.Crim.App. 2006), the Court assumed application of *Franks* to omissions and concluded that even if information omitted from an affidavit in support of a search warrant had been included, sufficient probable cause existed to issue the search warrant.

As to omissions from the affidavit, we also conclude Appellant did not establish that certain facts were omitted intentionally or with reckless disregard for their truth. *See Massey*, 933 S.W.2d at 146. Therefore, even assuming that *Franks* applies to the alleged omissions, we believe the Iowa magistrate would have had sufficient probable cause to issue the search warrant even if the omissions had been included in Detective Henderson's affidavit. The search warrant affidavit would still have averred that Appellant had been

14

communicating over the Internet and via electronic mail, as well as telephone conversations, with KMB, a minor, with the intent of having a sexual relationship with KMB. Again deferring to the trial court's conclusion, we cannot say the trial court abused its discretion in finding that the Iowa magistrate would have had sufficient probable cause to issue the search warrant.

The second argument advanced by Appellant in his suppression issue is the lack of nexus between the search of his home in Iowa and the charged offenses in Wisconsin of child enticement and use of a computer to facilitate a child sex crime. He urges that the search of his home resulted in a "fishing expedition."

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasion of governmental officials. *Berger v. New York*, 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The requirement that a search warrant be specific prohibits general searches and prevents the vesting of complete discretion in the officer who executes the warrant. *Id*. at 55-56. "Mere evidence," as distinguished from fruits or instrumentalities of a crime, may be seized, provided there is a nexus between the items seized and the crimes under investigation. *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). However, nexus between items to be seized and criminal behavior is automatically provided in the case of fruits or instrumentalities. *Id*.

15

In the instant case, most of the items enumerated in the search warrant, *i.e.*, camera, computers, and items related thereto, constituted fruits or instrumentalities of the charged offenses and nexus was automatically provided. Appellant's argument that nexus was not established between the search of his home and the charged offenses is misplaced. Both arguments comprising Appellant's challenge to the trial court's denial of his motion to suppress are overruled.

By his final issue, Appellant claims prejudice in the prosecutor's use of leading questions during the motion to suppress hearing. We disagree. Rule 611(c) of the Texas Rules of Evidence does not prohibit the use of leading questions. *See Wyatt*, 23 S.W.3d 28-29. It provides that leading questions should not be used during direct examination of a witness except as necessary to develop the testimony of that witness. Tex. R. Evid. 611(c). It is within the sound discretion of the trial court to permit the use of leading questions during direct examination. *Wyatt*, 23 S.W.3d at 28. To establish abuse of discretion, an appellant must show he was unduly prejudiced by use of leading questions. *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex.Crim.App. 1982), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983).

Appellant recognizes that the use of leading questions seldom results in reversible error. *Uhl v. State*, 479 S.W.2d 55, 57 (Tex.Crim.App. 1972). However, relying on *State v. Hosey*, 348 S.E.2d 805 (N.C. 1986), he argues that when leading questions result in testimony from the prosecutor rather than the witness, reversible error occurs. We are

bound to follow the law as it is pronounced by the Texas Court of Criminal Appeals and see no compelling reason to apply the rationale of *Hosey* in this case. *See Swilley v. McCain*, 374 U.S. 871, 875 (Tex. 1964).

According to Appellant, approximately 122 leading questions were asked of Detective Bentz during direct examination and 121 leading questions during re-direct examination. He argues the questions suggested the answers. Appellant interjected, and the trial court sustained, five leading question objections early during the suppression hearing. Following the fifth objection, the trial court admonished the prosecutor it wanted to "hear the witness's testimony." No further leading question objections were made after the prosecutor was admonished despite Appellant's calculations that several hundred leading questions were asked. By failing to object and obtain an adverse ruling each time the prosecutor asked a leading question, Appellant has not preserved this issue for review. *See* Tex. R. App. P. 33.1(a); *Garner v. State*, 939 S.W.2d 802, 807 (Tex.App.–Fort Worth 1997, pet. ref'd). *See generally Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984) (holding that defense counsel must object each time allegedly inadmissible evidence is offered). Issue three is overruled.

Having overruled Appellant's issues, the trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Publish.

17