PD-0765&0766-15

PD-0765&0766-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/30/2015 3:21:10 PM
Accepted 7/1/2015 2:44:44 PM
ABEL ACOSTA
CLERK

CAUSE NUMBER _____

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

## THOMAS LLOYD TAUNTON
## PETITIONER

**v.**

## THE STATE OF TEXAS

PETITION IN TRIAL COURT CAUSE NUMBERS CR-12-24098, CR-13-24755 FROM THE 336TH JUDICIAL DISTRICT COURT OF FANNIN COUNTY, TEXAS AND THE COURT OF APPEALS FOR THE SIXTH COURT OF APPEALS IN TEXARAKANA, TEXAS

CASE NUMBERS 06-14-00159-CR AND No. 06-14-00160-CR

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

July 1, 2015

ABEL ACOSTA, CLERK

**STEVEN R. MIEARS**
State Bar No. 14025600
211 North Main
Bonham, Texas 75418
Tel: 903-640-4963
Fax: 903-640-4964
Email: SteveMiears@msn.com

1 | P a g e

## Identity of Parties and Counsel

Pursuant to Rule 68.4(a), Rules of Appellate Procedure, the following is a complete list of the names and addresses of all parties to the trial court's final judgments and their counsel in the trial court, as well as appellate counsel, so the members of the court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the cases and so the Clerk of the Court may properly notify the parties to the trial court's final judgments or their counsel, if any, of the judgments and all orders of the Court of Criminal Appeals.

**Trial Judge    HONORABLE JUDGE LAURINE BLAKE**

**Court .................... 336TH JUDICIAL DISTRICT COURT,**

**Appellant .......................THOMAS LLOYD TAUNTON**
**William P. Clements Unit**
**9601 Spur 591**
**Amarillo, TX 79107-9606**

**Steven R. Miears (Counsel at trial and on Appeal)** SBN 14025600
211 North Main
POB 736
Bonham, Texas 75418
903 640 4963 fax: 903 640 4964
SteveMiears@msn.com

**THE STATE OF TEXAS          Richard E. Glaser** SBN 08000000
Criminal District Attorney
101 East Sam Rayburn Drive
Bonham, Texas 75418

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL..................................................2

TABLE OF CONTENTS ......................................................................... ...3

INDEX OF AUTHORITIES..................................................................4

STATEMENT REGARDING ORAL ARGUMENT....................................................5

STATEMENT OF THE CASE ......................................................................5

STATEMENT OF PROCEDURAL HISTORY................................................5

GROUND FOR REVIEW........................................................................ .5

The Court of Appeals erred in limiting its analysis of whether the federal constitutional error was harmless beyond a reasonable doubt to a focus on the weight of the evidence of Petitioner's guilt.

ARGUMENT..........................................................................................6

PRAYER FOR RELIEF.........................................................................8

APPENDIX (Copies of Opinions from Court of Appeals)

CERTIFICATE OF SERVICE.......... .......................................................8

CERTIFICATE OF WORD COUNT................................................................10

# INDEX OF AUTHORITIES

**Statutes, Codes, Constitutional Provisions, and Rules**

**Cases**

*Bell v. State,* 415 S.W.3d 278, 280 (Tex. Crim. App. 2013). p. 5

*Clay v. State,* 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). p.5

*Davis v. State,* 203 S.W.3d 845 (Tex. Crim. App. 2006). p. 5

*Harris v. State,* 790 S.W.2d 568 (Tex. Crim. App. 1990). p.5

*Schmutz v. State,* 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). p.5

*Snowden v. State,* 353 S.W.3d 815 (Tex. Crim. App. 2011). pp. 4- 5

*Taunton v. State,* 2015 Tex. App. LEXIS 6234 (Tex. App. Texarkana June 19, 2015). p.5

*Taunton v. State,* 2015 Tex. App. LEXIS 6233 (Tex. App. Texarkana June 19, 2015). p. 4.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is waived.

## STATEMENT OF THE CASE

This petition relates to two cases joined for trial and appeal. Petitioner was convicted by a jury of capital murder and murder. He was sentenced to life without parole for the capital murder, and life in prison for the murder. There are two opinions from the Court of Appeals. *Taunton v. State,* 2015 Tex. App. LEXIS 6233 (Tex. App. Texarkana June 19, 2015) [murder] and *Taunton v. State,* 2015 Tex. App. LEXIS 6234 (Tex. App. Texarkana June 19, 2015) [capital murder]. The opinion in the capital murder case discusses the single issue raised on appeal in both cases. This Petition relates to both cases as the issue is the same.

## STATEMENT OF PROCEDURAL HISTORY

The opinions of the Court of Appeals were handed down on June 19, 2915. No motions for rehearing were filed.

## GROUND FOR REVIEW

The Court of Appeals erred in limiting its analysis of whether the federal constitutional error was harmless beyond a reasonable doubt to a focus on the weight of the evidence of Petitioner's guilt.

## ARGUMENT

The Court of Appeals improperly limited its analysis of whether the constitutional error was harmless. Review should be granted. In *Snowden v. State,* 353 S.W.3d 815 (Tex. Crim. App. 2011) this Court advised how to assess whether federal constitutional error was harmless beyond a reasonable doubt. *Snowden* is never cited by the Court of Appeals. Instead, the Court of Appeals cited the factors in *Clay v. State,* 240 S.W.3d 895, 904 (Tex. Crim. App. 2007), and it cited to *Davis v. State,* 203 S.W.3d 845 (Tex. Crim. App. 2006). *See Taunton v. State,* 2015 Tex. App. LEXIS 6234, p. 17 (Tex. App. Texarkana June 19, 2015).

In *Snowden*, this Court emphasized that the factors earlier set forth in *Harris v. State,* 790 S.W.2d 568 (Tex. Crim. App. 1990) were not to be the exclusive considerations. And, the Court modified the *Harris* factors to include "the nature of the error, whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in its deliberations." *See Bell v. State,* 415 S.W.3d 278, 280 (Tex. Crim. App. 2013). And, as this Court said in

*Snowden*, there are many other considerations which may logically inform a proper harm analysis in a case. Any circumstance apparent in the record should be considered. *Schmutz v. State,* 440 S.W.3d 29, 39 (Tex. Crim. App. 2014).

The Court of Appeals erred by focusing its analysis on what it considered the overwhelming evidence of guilt. This Court has rejected that approach. A constitutional error may not be deemed harmless simply because the reviewing court is confident that the result the jury reached was correct. This Court has emphasized that Rule 81(b)(2) requires reviewing courts to focus, not upon the perceived accuracy of the conviction, but upon the error itself in the trial. *Snowden v. State,* 353 S.W.3d 815, 818-819 (Tex. Crim. App. 2011).

Among the factors to be reviewed include "the probable implications of the error." *Snowden, id.* at 822. Included within these implications are trial choices that only the Defendant can make. Here, after the trial court denied the motion to suppress, the Petitioner absented himself from the trial, and only returned to testify. (RR Vol. 4 p. 8.) (RR Vol. 7 p. 5.) The Court of Appeals failed to consider how the constitutional error may have affected his choices on these decisions that involve fundamental rights.

By focusing on the weight of the evidence supporting guilt the Court of Appeals erred.

## PRAYER FOR RELIEF

This Court should grant review. After review, the Court should remand the case back to the Court of Appeals for an analysis for harm.

## APPENDIX

Copies of the two opinions of the Court of Appeals are attached.

RESPECTFULLY SUMITTED,

_____

**Steven R. Miears**
211 North Main
Bonham, Texas 75418
stevemiears@msn.com
Tel. 903-640-4963
Fax: 903-640-4964
State Bar Card No. 14025600

Attorney for Appellant

### Certificate of Service

This is to certify that a true and correct copy of the above and foregoing Appellant's Brief on Appeal was hand-delivered to Richard E. Glaser, Fannin County Criminal District Attorney; 101 East Sam Rayburn Drive; Bonham, Texas 75418; on February 12, 2015; and to the State Prosecuting Attorney, LISA C.

McMINN, P.O. Box 13046, Capitol Station, Austin, Texas 78711, and that a copy was mailed to the Appellant, Thomas Lloyd Taunton.

_____

Steven R. Miears

# CERTIFICATE OF WORD COUNT

Counsel for the Appellant certifies that the word count of this brief is less than 1,241 words and WELL within the limitations for length of PETITIONS FOR DISCRETIONARY REVIEW.

_____

Steven R. Miears



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00159-CR

_____

THOMAS LLOYD TAUNTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-12-24098

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

OPINION

Thomas Lloyd Taunton was convicted by a jury of the capital murder (*see* TEX. PENAL CODE ANN. § 19.03(a)(7)(A) (West Supp. 2014)) of his stepfather, Harold Harpst, and of the murder (*see* TEX. PENAL CODE ANN. § 19.02(b) (West 2010)) of his mother, Willie Sue Harpst.[1] After being sentenced to life imprisonment without parole and fined $10,000.00 on the capital murder charge and being sentenced to another term of life imprisonment on the murder charge, Taunton filed an appeal. Taunton's complaints on appeal center exclusively on the sufficiency of the affidavits used to support the issuance of warrants that permitted the search of Taunton's truck, trailer, and a rental car he was using when arrested. We affirm Taunton's conviction.

I.      Facts

The first inkling law enforcement authorities received that something may have been amiss at the Harpst home was when the Leonard, Texas, Police Department received a call from Taunton on January 15, 2012, wherein Taunton expressed concern that his mother, his stepfather, and his sister, Regina Taunton, were all missing from the home they all shared with Taunton. The Leonard Police Department spokesman, realizing that the Harpst home was outside the Leonard City Limits, suggested that Taunton give this missing persons' report to the Fannin County Sheriff's Office. Although Taunton did call the sheriff's office to make such a report, he terminated the call before providing a full report.

---

[1]This appeal is from Taunton's conviction for the capital murder of Harold. Taunton appeals from his conviction for the murder of Willie Sue under our cause number 06-14-00160-CR.

2

Later that same day, Jeff Harpole, a neighbor, observed Taunton loading his white Ford pickup truck and then saw that pickup truck (pulling an enclosed trailer) exit the Harpst premises that evening. A couple of days later, Taunton called Harpole on the telephone and left a voice mail message informing Harpole that Taunton had been traveling and had been unable to reach any of his family members by telephone. Although Taunton indicated that he would be away from the Harpst home while traveling, he mentioned neither his intended destination nor a time frame for his anticipated return. Expressing concern for the family's dog and cat, Taunton asked Harpole to feed them while everyone was absent. Harpole had noticed that the automated entry gate across the drive leading to the Harpst house had remained open for some time and that the Harpst's vehicle was not on the premises. Neither of these situations were commonplace, and those uncharacteristic circumstances made Harpole a bit uneasy. After the police had interviewed Harpole, he called Taunton, and Taunton indicated that the Harpsts and his sister seemed to be missing, but told Harpole, "Don't worry about it."

On January 17, Taunton placed a telephone call to a friend, Kevin Mahon, a resident of West Virginia, who had once been close friends with Taunton when both worked with a country band in the mid-1990s, but with whom Taunton communicated irregularly, maybe once every month or two. Taunton's first attempt to reach Mahon had been unsuccessful, and Taunton left a message that he wanted to make Mahon rich, but gave no details of the means by which he proposed to achieve this. A few minutes later, Mahon used his cell phone to return Taunton's call. During this telephone conversation, Taunton revealed that he had committed multiple murders, including the murder of his own mother. Mahon, shaken by this revelation, cited the poor cellular

3

telephone coverage in his area and suggested that Taunton wait a bit and then call the telephone in Mahon's home. Taunton agreed and returned the call; however, Mahon had taken the step of securing a recording device and recorded the telephone conversation. During this telephone conversation, Taunton's voice was recorded as he calmly described the murder of his mother, stepfather, and sister.

According to Taunton's rendition of the events, Harold (who was a dual-leg amputee) had told Taunton that he and Taunton's mother were suffering financial problems and that he believed they were likely to be unable to keep the house in which all four of them lived. At that time, Harold told Taunton that Taunton needed to remove his property from the barn on the premises. Taunton was infuriated at what he interpreted as Harold's dictating to him regarding his possessions, and he further resented the physical care that Taunton believed Harold's physical disabilities forced Taunton to provide.

When Harold and Taunton's mother were at church, Taunton got out his guns in preparation to kill Harold. According to the recorded telephone call, Taunton described the ensuing events in this way:

> I walked into the bathroom where Harold was -- Mom was in there -- and [she] looked down and saw a gun, so I just popped her first. Dropped her. And then I went after Harold, because he was on the pot. He was having diarrhea problems, and the gun misfired one time, and then I was able to hit him again, but he wasn't dead yet, so I had to pop him again. And Regina walks in, so I had to pop her, my sister.

4

A pathologist at trial confirmed that Willie Sue had been killed with a single shot, that Harold had been struck by several gunshots, and that Regina had been shot multiple times.[2] The slugs that killed the Harpsts all were from .22 caliber long rifle bullets fired from the same weapon. Some of the bullets in Regina's body appeared to have likewise come from a .22 caliber rifle, but there were also slugs from a different caliber weapon found in Regina's body.

In the recorded telephone conversation with Mahon, Taunton was apparently extremely talkative. After relating the details of the murder of his family, he went on to describe some of the efforts he made to destroy the evidence of the crimes, such as cutting out and removing the carpet from the bathroom where he had shot Harold. Even with Taunton's efforts to hide the evidence, crime scene investigators were able to locate multiple spots of all of the victims' blood throughout the house.

Not content to describe his efforts of the cleanup at the scene of the murders, Taunton continued to talk to Mahon, describing his efforts to dispose of the three bodies, a task he said took him two days. According to the description given to Mahon, Taunton eventually located what he believed to be a suitable site for disposal of the bodies.

> I went back down through Highway 11 and found a place with an old barn on the side of the road that had a big piece of property. The barn was big enough that I could hide behind it 'til dark, and I needed the truck out because it was probably about 800 yard -- I mean, 800 feet from the barn to the edge of the property was, the creek, and a wooded area where I could put the bodies.

---

[2]The indictment of Taunton for the capital murder of Harold first employed the murders of both Willie Sue and Regina as the rationales for elevating the charge for the murder of Harold to that of capital murder. The indictment was amended to strike Regina's name. The record does not reflect whether Taunton faced any charges for the murder of his sister.

After at least one fruitless search for the site described by Taunton, Texas Rangers were able to pinpoint the eventual body disposal site, locating the bodies of both of the Harpsts and of Regina in an area that comported with the description given by Taunton in his telephone conversation with Mahon.[3] Heavy rubber gloves found at the site were shown to bear the blood of both of the Harpsts, as well as DNA from Taunton. The boots taken from Taunton when he was arrested bore residue of the blood of all three murder victims. The Harpsts' silver minivan was found abandoned in a motel parking lot in Durant, Oklahoma.

At trial, the State did not rely solely on the contents of Taunton's recorded telephone conversation, but also on the testimony of ten live witnesses, including three Texas Rangers. Among the other evidence the State offered at trial was a video recording of Taunton using the Harpsts' debit card to withdraw money from their checking account after their deaths and another video recording of Taunton filling the Harpsts' minivan with fuel at the Murphy USA gasoline station located on the Walmart parking lot in Bonham, Texas, after the Harpsts had been slain.

By the time the Texas Rangers became involved in the investigation, Taunton was believed to no longer be in Fannin County or its surrounding areas, so Ranger Brad Oliver made a request of Taunton's cell phone carrier, AT&T, to assist in locating Taunton by "pinging" his cell phone.[4] AT&T agreed to assist and informed Oliver that Taunton was in the Shreveport, Louisiana, area. Taunton was eventually arrested at a Ford automobile dealership in Stonewall, Louisiana, where

---

[3]Harold's body was found naked from the waist down, consistent with Taunton's revelation that Harold had been shot while sitting on the commode, and Regina's body was found clad only in a nightgown, this being in conformity with Taunton's revelation that she had not attended church with the Harpsts the morning of the murders.

[4]A cell phone provider can use this method to triangulate among cell phone towers to determine the location of the cell phone.

6

his pickup truck and enclosed trailer were located. Oliver obtained a search warrant through a Louisiana court to search the truck and trailer belonging to Taunton and the rental car that he had been provided while his truck was being repaired.

## II.     Challenge to Sufficiency of Affidavits Supporting Search Warrants

At trial, Taunton moved to suppress the evidence found in his truck and trailer and in the rental car. After a hearing, the trial court denied the motion. Oliver sought three search warrants (one each for the truck, the trailer, and the rental car), each of which was based upon separate, but very similar, affidavits presented to the issuing magistrate. On appeal, Taunton contends that the trial court erred by denying his motion to suppress because the affidavits supporting the search warrants lacked sufficient information for a magistrate issuing a search warrant to form the basis of a belief (1) that the offenses of capital murder or murder had been committed, (2) that the items listed as objects of each of the searches constituted either evidence of those offenses or evidence that Taunton had committed those offenses, or (3) that the items that were the subjects of the search warrants were likely to be found in the truck, the trailer, or the rental car described in the three warrant applications.[5]

As Taunton points out, both the United States and Texas Constitutions guarantee the right of the people to be secure against unreasonable searches of their persons, houses, papers, and effects. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. As an exception to the general rule

---

[5]Neither party raised the issue of whether Louisiana law is applicable to this case, nor did Taunton challenge, in the trial court, whether the affidavits were sufficient under Louisiana law. The only issue(s) before us is the trial court's ruling on the sufficiency of the officers' affidavits.

articulated by the Texas Court of Criminal Appeals in *Guzman v. State*,[6] an issuing magistrate's decision to grant an application for a search warrant should be reviewed with a deferential standard of review. *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). The deferential review "encourage[s] police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement." *Rodriguez v. State*, 232 S.W.3d 55, 59–60 (Tex. Crim. App. 2007). Affidavits for arrest or search warrants should be interpreted in a "'common sense and realistic manner,'" and once a magistrate has found probable cause, warrants should not thereafter be invalidated through a "hypertechnical" interpretation of their supporting affidavits. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011). We will sustain the issuance of the warrant if "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing."[7] *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *see Swearingen*, 143 S.W.3d at 811.

Although we grant great deference to the determination of a magistrate issuing a warrant, we do not grant that same degree of deference to a reviewing trial court. A motion to suppress is normally reviewed based on a bifurcated standard which (1) grants deference to the trial court's determinations of historical facts that are based on an evaluation of credibility and (2) reviews de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim.

---

[6]The general rule is that probable cause determinations are reviewed de novo. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) (citing *Ornelas v. United States*, 517 U.S. 690 (1996)).

[7]In determining whether probable cause exists, the magistrate may draw inferences from his common-sense interpretation of the affidavits supporting the application for the search warrant. *Gates*, 462 U.S. at 238, 240; *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004).

App. 2011). "However, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations, rather the trial court is constrained to the four corners of the affidavit." *Id.* "Because probable cause to support the issuance of the warrant is determined from the 'four corners' of the affidavit alone, there are no credibility choices to be made by the trial court," and we review de novo the court's ruling. *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd); *see McKissick v. State*, 209 S.W.3d 205, 211–12 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Elardo v. State*, 163 S.W.3d 760, 765 (Tex. App.—Texarkana 2005, pet. ref'd).

To justify the issuance of a search warrant, the supporting affidavit must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West 2015). The facts alleged in the affidavits "must be sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued." *State v. Delagarza*, 158 S.W.3d 25, 26 (Tex. App.—Austin 2005, no pet.). The determination of the sufficiency of an arrest or search warrant is limited to the four corners of the affidavit. *Crider*, 352 S.W.3d at 710. "The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that are in the affidavit, not those that are omitted from the affidavit." *Rodriguez*, 232 S.W.3d at 62. As explained in *Wise v. State*,

9

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Wise v. State*, 223 S.W.3d 548, 556 (Tex. App.—Amarillo 2007, pet. ref'd).

The following allegations are taken from three affidavits submitted in support of the search warrants at issue in this case. In each of the affidavits, there are two affiants: John Cobb, a peace officer with the DeSoto Parish Sheriff's Office in Louisiana, and Ranger Oliver. On January 18, 2012, Oliver began investigating the complaints that Harold, Willie Sue, and Regina were murdered in Fannin County, Texas, and he obtained what he claimed in the affidavits was "overwhelming evidence and information that Thomas Taunton was the one who murdered them." That same day, a justice of the peace in Texas issued a warrant for the arrest of Taunton on the charge of capital murder. The affidavits allege that the next day, January 19, 2012,

> United States Marshals Service personnel in Shreveport, Louisiana received information that Thomas Taunton . . . was wanted by Texas authorities for Capital Murder and that he was possibly traveling through Louisiana en route to Mississippi. Marshals Service personnel notified law enforcement agencies throughout Louisiana to be on lookout (BOLO) for Taunton who was possibly traveling in a white Ford pickup truck pulling a trailer.

Cobb and other law enforcement personnel located Taunton at the Jimmy Granger Ford Dealership in Stonewall, DeSoto Parish, Louisiana, and arrested him. Law enforcement officers found a white Ford pickup truck and a box trailer, both registered to Taunton (whose address was shown on the registration as Leonard, Texas), at the dealership. On January 18, 2012, Taunton had driven the Ford pickup truck to the dealership, where he left it to be repaired. The dealership had loaned Taunton a passenger vehicle, described in one affidavit as a black 2010 model four-door Ford

Fusion, to use while his truck was being repaired. The truck, the car, and the trailer were all towed to the DeSoto Parish Sheriff's Office Training Center and locked in a storage building.

The affidavits sought a warrant to search the two vehicles and the trailer for:

1.      Blood evidence, to include, but not limited to, spatter, droplets, smears and pools and other residue constituting evidence of bleeding injuries or other violent trauma.
2.      Firearms, unknown make or model, including, but not limited to a .380 caliber pistol.
3.      Ammunition, fired or unfired, to include .380 caliber and bullet projectiles.
4.      Clothing that might contain evidence of a homicide including blood.
5.      Any and all rags, cloths, bags and cleaning supplies or devices used to clean blood.
6.      Any and all carpet.
7.      Check books that belonged to homicide victims.
8.      Cellular telephones that belonged to homicide victims.
9.      Credit and debit cards that belonged to homicide victims.
10.     Any unknown items of evidentiary importance.[8]

When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Rodriguez*, 232 S.W.3d at 61. Here, the affidavits stated that three people had been murdered and that Taunton was charged with capital murder; therefore, the magistrate could have arguably concluded that a specific offense had been committed. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c)(1). However, the affidavits failed to disclose any of the "overwhelming evidence and information" mentioned in the affidavits that tied Taunton to those murders. In other words, the affidavits made no indication how Taunton was related to or associated with the murder victims or how he may have committed these specific murders, and they failed to specify the evidence the affiants found to be overwhelming and that brought them to the conclusion that Taunton was

---

[8]The affidavit for the rental car also sought "[r]eceipts or any other information to indicate where Thomas Taunton stayed or spent the night of January 18, 2012."

11

involved in the murders. The statement indicating Taunton's culpability, lacking any information regarding its bases, is conclusory. Further, one cannot discern from the four corners of the affidavits how blood evidence, firearms, ammunition, carpet, the victims' cell phones, or credit/debit cards would be evidence of the offenses to which reference is made in the affidavits. Therefore, under the totality of the circumstances, the magistrate lacked a substantial basis for the issuance of a search warrant based on these affidavits. Accordingly, we find that the trial court erred in denying Taunton's motion to suppress obtained as a result of the search.

## III. Damage Assessment

The erroneous admission of evidence over a valid Fourth Amendment objection is a constitutional error, and reversal is required unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction. *Hernandez v. State*, 60 S.W.3d 106, 106 n.1 (Tex. Crim. App. 2001); *see* TEX. R. APP. P. 44.2. The reviewing court must reverse the conviction if there is a reasonable possibility that the error, within the context of the trial, moved the jury from acquitting the defendant to convicting him. *Davis v. State*, 203 S.W.3d 845, 852–53 (Tex. Crim. App. 2006).

In addition to the caselaw, we are directed by Rule 44.2(a) of the Texas Rules of Appellate Procedure as follows:

> If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

TEX. R. APP. P. 44.2(a).

12

In making this determination, the appellate court must consider the entire record and weigh the following factors: "(1) the importance of the [complained-of] evidence to the State's case; (2) whether the . . . evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the [complained-of] evidence, . . . ; (4) the overall strength of the State's case"; and (5) any other factor in the record that affects the probable impact of the error. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (citing *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006)).

Almost all of the evidence found in or developed from what was obtained from the truck, the car, and the trailer (such as gasoline receipts, hair dye, and video recordings of Taunton at various service stations at certain times after the murders) was peripheral and cumulative in nature because it bore neither directly on the identity of the murderer nor the planning or commission of the murders, but instead, related largely to Taunton's flight from Fannin County and his use of the decedents' vehicle following the murders. The ammunition found as a result of the search provided only a very small link to any of the events associated with the murders. The evidence produced from the searches was also inconsequential in its effect because the State's case against Taunton was very strong, even in its absence. Taunton's recorded confession was played for the jury, and they heard Taunton explain, in his own detailed words, how he planned the murders, how and where he killed each of his family members, and then where he hid their bodies. The blood evidence found in the house along with the ballistic evidence corroborated Taunton's description of where and how he killed each victim. Taunton was seen loading his truck and trailer and leaving the family premises around the day the murders reportedly occurred. The bodies were found in a

13

place fitting the description of the site where Taunton told Mahon he had dumped the bodies. Harold's body, when found, was unclothed from the waist down, apparently confirming Taunton's recorded statement that Harold had been shot as he was sitting on a commode. Taunton's DNA was found on a pair of thick gloves found where the bodies had been dumped. The blood of his mother and sister were found on the boots Taunton was wearing at the time he was arrested.

## IV. Conclusion

Based on the foregoing, we find beyond a reasonable doubt that the erroneous admission of the evidence did not contribute to Taunton's conviction. We overrule this point of error.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     June 3, 2015
Date Decided:       June 19, 2015

Publish

14



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00160-CR

_____

THOMAS LLOYD TAUNTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-13-24755

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Thomas Lloyd Taunton was convicted by a jury of the capital murder of his stepfather, Harold Harpst, *see* TEX. PENAL CODE ANN. § 19.03(a)(7)(A) (West Supp. 2014), and of the murder of his mother, Willie Sue Harpst, *see* TEX. PENAL CODE ANN. § 19.02(b) (West 2011). Taunton was convicted of both crimes, was sentenced to life imprisonment without parole and fined $10,000.00 for the capital murder of Harold, and was sentenced to life imprisonment for the murder of Willie Sue. Taunton appeals both convictions. Taunton has filed a single consolidated brief in both cases raising a single appellate issue.

Taunton appeals from his conviction for the capital murder of Harold under our cause number 06-14-00159-CR. Here, Taunton appeals from his conviction for the murder of Willie Sue. Specifically, Taunton claims that the affidavits submitted by law enforcement officers in support of their applications for warrants authorizing searches of his truck and trailer and of a rental car he was driving were insufficient under the Fourth Amendment to support issuance of the warrants. Consequently, he contends the trial court erred in denying his motion to suppress the evidence seized as a result of those invalid searches.

We addressed this issue in detail in our opinion of this date in Taunton's appeal in cause number 06-14-00159-CR. For the reasons stated therein, we likewise conclude that Taunton has not shown error in this case.

We affirm the trial court's judgment.



Ralph K. Burgess
Justice

Date Submitted:     June 3, 2015
Date Decided:       June 19, 2015

Do Not Publish

3